UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BRIAN ALEXANDER-FETTERMAN individually and on behalf of all others similarly situated,<br>ERIC MARKSON individually and on behalf of all others similarly situated,<br>JENAY REYNOLDS-SIBBACH individually and on behalf of all others similarly situated,<br>AARON ROSEN individually and on behalf of all others similarly situated,<br>KEVIN SMITH individually and on behalf of all others similarly situated,<br>NANCY WINCHESTER individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHEM INSURANCE COMPANIES, INC.,<br>ELEVANCE HEALTH, INC. F/K/A ANTHEM, INC.,<br><br>Defendants. | ) | No. 1:25-cv-02282-MPB-MG |

**ORDER ON MOTION TO DISMISS**

Brian Alexander-Fetterman and five others, on behalf of themselves and a putative class, sued Anthem Insurance Companies, Inc. and its parent company, Elevance Health, Inc., for allegedly tracking, acquiring, and monetizing Plaintiffs' personal health information, which Plaintiffs say violates the Wiretap Act, 18 U.S.C. § 2510 *et seq.*, and amounts to a breach of fiduciary duty, intrusion upon seclusion, and unjust enrichment. Before the Court is Defendants' Motion to Dismiss. (Docket No. 51). For the following reasons, that Motion, (Docket No. 51), is **GRANTED in part** and **DENIED in part**.

The Court takes the following facts as true. Plaintiffs are insureds of Defendants' health plans who use www.anthem.com (the "Website") to "research and seek advice on highly sensitive health issues, manage health benefits, . . . and access information about their personal healthcare coverage" (collectively, "personal health information"). (Docket No. 45, Amended Complaint ("Am. Compl.") at ECF pp. 7–10). At the bottom of the Website are several links, including "Protecting Your Privacy," which if clicked directs the user to Anthem's Privacy Policies. (*Id.* at ECF p. 57). The Privacy Policies webpage includes a "Web Privacy Statement" situated above some drop-down menus, one of which is titled, "What Information Will We Collect?" (*Id.* at ECF pp. 58, 60–61). Here Anthem advises its users that "web trackers" log navigation habits and store user preferences. (*Id.* at ECF p. 61). Another of the links in the footer is "Terms of Use," which advises users that "[b]y using our Applications you are agreeing to these Terms." (*Id.* at ECF pp. 12, 57). The Terms of Use do not reference or link to the Privacy Policies, and they do not indicate to users that, by using the Website, they are agreeing to the tracking and disclosure of their personal health information. (*Id.* at ECF p. 57).

The "tracking technologies" that Defendants embed in their Website are provided by third-party vendors, Adobe, Inc., Medallia, Inc., and Quantum Metric, Inc. (*Id.* at ECF pp. 3–5, 20, 33–34, 39, 46). These technologies capture Website users' Personal Health Information. (*Id.*). They do this by tracking user-generated search queries, button clicks, and website navigation activity. (*Id.* at ECF p. 50). To take just one germane example, if a Website user searches for "Obstetrics/gynecology" in her patient portal, "the full and exact content of that search is embedded in a URL and transmitted to Adobe." (*Id.* at ECF p. 51) (emphases omitted). Defendants also have access to the personal health information captured by the tracking technologies. (*Id.* at ECF pp. 3–4, ¶¶ 9–12). Plaintiffs allege that their personal health

information was surreptitiously harvested by the tracking technologies without Plaintiffs' knowledge or consent. (*Id.* at ECF p. 4).

Because personal health information is valuable, Defendants use it to "enrich themselves." (*Id.* at ECF pp. 4–5, 21, 33). Personal health information is valuable to Defendants because they can use it to "identify groups or segments among their insureds[] and refine marketing to increase enrollment and revenue." (*Id.* at ECF p. 33). Plaintiffs lost privacy because of Defendants' actions. (*Id.* at ECF p. 7).

Plaintiffs claim that Defendants' acquisition of their personal health information violates the Wiretap Act. The Act forbids the intentional interception and disclosure of any electronic communication, 18 U.S.C. § 2511(1)(a), (c)–(d), and authorizes the victim of an interception to bring a civil action against the interceptor, *id.* § 2520(a). The Act also forbids one from procuring another to intercept an electronic communication, *id.* § 2511(1)(a), and this is the theory of liability that Plaintiffs press,[1] (Docket No. 54 at ECF pp. 24–26). To that end, Plaintiffs say Defendants embedded third-party tracking technologies in the Website to enable third parties to capture Plaintiffs' communications with the Website. (Am. Compl. at ECF pp. 71–72). These allegations state a claim for procurement liability under § 2511(1)(a). *See, e.g.*, *Dawson v. Univ. of Phoenix, Inc.*, No. 1:25-cv-3497, 2026 WL 92248, at *1, 14–15 (N.D. Ill. Jan. 13, 2026); *A.D. v. Aspen Dental Mgmt., Inc.*, No. 24 C 1404, 2024 WL 4119153, at *3 (N.D. Ill. Sept. 9, 2024).

Nevertheless, Defendants offer six reasons why Plaintiffs' Wiretap Act claim should be dismissed. None is persuasive.

[1] Two other theories of Wiretap Act liability, interception and disclosure, 18 U.S.C. § 2511(1)(a), (c), appear in Plaintiffs' Complaint. But, because Plaintiffs do not defend them against Defendants' attack, (Docket Nos. 52 at ECF pp. 24–25; 54 at ECF pp. 24–26; 57 at ECF p. 15), the Court takes those theories to be abandoned, *see, e.g.*, *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011).

The first two reasons are that Plaintiffs failed to allege a standing-conferring injury and, even if they did, consented to everything Defendants did with their personal health information. But it is too early to assess consent. Consent is an affirmative defense, *Doe v. Smith*, 429 F.3d 706, 709 (7th Cir. 2005), and an affirmative defense warrants dismissal only if the plaintiff pleads each element of the defense in the complaint, and so effectively pleads itself out of court, *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). Plaintiffs have not done that here. Plaintiffs say they did *not* consent to Defendants' disclosure of their personal health information. (Am. Compl. at ECF pp. 65, 71); *see Valentine v. WideOpen W. Fin., LLC*, 288 F.R.D. 407, 413 (N.D. Ill. 2012). Beyond that, consent is difficult to adjudicate without a record, especially consent to web-based agreements buried behind clickable links, like the one at issue here, because with these kinds of agreements the Court cannot presume the user had reasonable notice of their terms. *See Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034–35 (7th Cir. 2016). More fundamentally, the Court does not see why Defendants believe Plaintiffs' continued use of the Website, and therefore their assent to Defendants' "Terms of Use," constitutes agreement to the "Privacy Policies"—for the latter are neither referenced in the Terms of Use nor linked there. (Am. Compl. at ECF pp. 57–58).

As for standing, the loss of Plaintiffs' privacy wrought by Defendants' alleged disclosure of their personal health information is akin to the harm remediable at common law under the tort of invasion of privacy, and therefore is sufficiently concrete to establish standing, at least at the pleading stage. *Doe v. Genesis Health Sys.*, No. 4:23-cv-4209, 2025 WL 1000192, at *3 (C.D. Ill. March 18, 2025); *Smith v. Loyola Univ. Med. Ctr.*, No. 23 CV 15828, 2024 WL 3338941, at *4 (N.D. Ill. July 9, 2024); *cf. Black v. IEC Grp., Inc.*, --- F.4th ---, 2026 WL 3031874, at *2–3 (9th Cir. Oct. 9, 2026) (concluding that alleged unauthorized disclosure of plaintiffs' sensitive health

information by administrator of plaintiff's insurance plans was analogous to breach of confidence and contract at common law and could therefore constitute a standing-conferring injury).

Defendants' third basis for dismissal is that they did not "intercept" any of Plaintiffs' personal health information, because to intercept means to acquire the "contents" of a communication, and the health information that Plaintiffs allege was intercepted does not constitute "contents," as the Act uses that term. 18 U.S.C. § 2510(4); (Docket No. 52 at ECF pp. 23–24). This argument is belied by the allegation that the Website tracking technologies log and transmit users' searches. Plaintiffs allege, for example, that the content of searches such as "hysterectomy" and "Obstetrics/gynecology" are captured by the Adobe tracking technology and transmitted to Adobe. (Am. Compl. at ECF pp. 50–51). Plaintiffs also allege that Third-Party Vendor Medallia, which Defendants embedded in their Website patient portal, receives Website users' "personal, highly sensitive private data" by tracking "typed entries . . . and the content of Website Communications, such as search queries." (*Id.* at ECF pp. 39–41, 44). Quantum Metric, another Third-Party Vendor embedded by Defendants in the Website, operates similarly. (*Id.* at ECF pp. 33–38). The Act defines "contents" as "information concerning the substance, purport, or meaning" of that search, 18 U.S.C. § 2510(8), and the content of Website users' search results is plainly "contents" under this expansive definition, *see In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 718 (D. Minn. 2023).

Fourth, Defendants argue that the right-of-action provision under which Plaintiffs bring this claim does not apply to claims premised on procurement liability. But there is nothing in the Act's text that warrants Defendants' cramped interpretation. The Act says that "any person whose . . . electronic communication is intercepted . . in violation of this chapter" may pursue a civil action against the entity that "engaged in that violation," and one way a violation occurs is if

person one procures person two to do the intercepting. 18 U.S.C. §§ 2520(a), 2511(1)(a); *Dawson*, 2026 WL 92248, at *14; *Q.J. v. PowerSchool Holdings, LLC*, No. 23 C 5689, 2025 WL 2410472, at *6 (N.D. Ill. Aug. 20, 2025); *Lonegan v. Hasty*, 436 F. Supp. 2d 419, 427–28 (E.D.N.Y. 2006).

Fifth, Defendants say that they and the third-party vendors were parties to Plaintiffs' communications with the Website, and they argue a party cannot intercept a communication directed toward it, 18 U.S.C. § 2511(2)(d), save for one exception (the "crime-tort" exception) discussed below. But Plaintiffs plead the opposite—they say they did not know the Website was communicating with the third parties. (Am. Compl. at ECF pp. 2–4). This fact distinguishes this case from *Zak v. Bose Corp.*, No. 17-cv-2928, 2019 WL 1437909 (N.D. Ill. Mar. 31, 2019). That case involved a Bose smartphone app to which Bose headphone owners connected their Spotify music accounts and from which they controlled music streaming. *Id.* at *1. Bose allegedly collected users' music-related information and transmitted it to third parties without the plaintiffs' knowledge. *Id.* Plaintiffs' Wiretap Act claim against Bose was dismissed because Bose was a party to the communications plaintiffs had with the Bose app, and the plaintiffs pleaded this fact in their complaint. *Id.* at *3. But here, unlike in *Zak*, Plaintiffs do not plead that the third parties were "known participant[s]" to their communications with Defendants. *See id.* at *4. And neither of the other two cases Defendants cite for their argument on this point involves the Wiretap Act. *Cole v. Quest Diagnostics Inc.*, No. 25-1449, 2025 WL 3172640 (3d Cir. Nov. 13, 2025); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021).

Nor is it clear that Defendants Elevance and Anthem can invoke this party-to-the-communication defense. Defendants are being sued as procurers, not interceptors, and it is the latter that § 2511(2)(d) seems to immunize, a point other courts have observed. *Q.J.*, 2025 WL

2410472, at *6 n.3; *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 926–27 (D. Minn. 2024). This issue is not developed in the Parties' briefing, however, so the Court will not rest any decision here. The Court hopes the Parties will elaborate on this point in future briefing.

Sixth and finally, Defendants say that, as parties to Plaintiffs' communications, they cannot be liable under the Act unless the interception they allegedly procured was done "for the purpose of committing any criminal or tortious act," 18 U.S.C. § 2511(2)(d), and argue that it was not. The Court disagrees. Violating HIPAA's dictate to keep individually identifiable health information private fits the crime-tort exception. *Stein v. Edward-Elmhurst Health*, No. 23-cv-14515, 2025 WL 580556, at *4 (N.D. Ill. Feb. 21, 2025) (collecting cases). The simple act of logging into an online patient portal, to take one example, exposed Plaintiffs' status as patients to the third-party vendors, which is HIPAA-protected information. (Am. Compl. at ECF pp. 47–48); *Hartley v. Univ. of Chi. Med. Ctr.*, No. 22 CV 5891, 2025 WL 2802317, at *2–3 (N.D. Ill. Oct. 1, 2025); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1081–82 (W.D. Wash. 2024). Defendants are wrong to conclude that a criminal or tortious act under § 2511(2)(d) must be done for the purpose of violating the law, instead of, say, making money, which is the purpose Plaintiffs attribute to Defendants' actions. One's "purpose must be to commit an act, and that act must be criminal or tortious[,]" like violating HIPAA, but a "desire to commit a crime *qua* crime . . . isn't necessary." *Stein*, 2025 WL 580556, at *6; *see also Aspen Dental Mgmt.*, 2024 WL 4119153, at *3.

Plaintiffs have stated a Wiretap Act claim.

The Court turns to Plaintiffs' state-law claims, starting with breach of fiduciary duty. Plaintiffs say they have a fiduciary relationship with Defendants, their insurer, because Plaintiffs entrusted them to keep Plaintiffs' personal health information private, Defendants breached this

duty by disclosing Plaintiffs' personal health information, and this loss of privacy harmed them. These allegations state a claim for breach of fiduciary duty. *Farmers Elevator Co. of Oakville, Inc. v. Hamilton*, 926 N.E.2d 68, 79 (Ind. Ct. App. 2010); *see also Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 518–19 (Ind. 1993) (observing that the relationship between an insurer and its insureds is "at times one of a fiduciary nature"). Moreover, determining whether a fiduciary relationship exists between these parties will require evidence. *E.g.*, *Ests. of Kalwitz v. Kalwitz*, 717 N.E.2d 904, 914 (Ind. Ct. App. 1999). But we are at the pleading stage. The lack of record also warrants rejecting Defendants' argument that Plaintiffs have not pleaded any compensable damages flowing from Defendants' alleged breach. *See Brahm v. Hosp. Sisters Health Sys.*, No. 23-cv-444, 2024 WL 3226135, at *6–7 (W.D. Wis. June 28, 2024). Plaintiffs say they lost privacy when their health information was shared with the third parties, and that is enough for now.

The unjust enrichment and intrusion upon seclusion claims must be dismissed, however. One cannot be unjustly enriched by another unless the latter expected payment from the former for the benefit conferred. *Neibert v. Perdomo*, 54 N.E.3d 1046, 1051 (Ind. Ct. App. 2016). But Plaintiffs do not allege that they expected to be compensated for turning over their PHI to Defendants. As for intrusion upon seclusion, the complained of intrusion must be made upon plaintiff's "physical space" to be actionable. *Curry v. Whitaker*, 943 N.E.2d 354, 358 (Ind. Ct. App. 2011); *see Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991); *see also Westminster Presbyterian Church of Muncie v. Cheng*, 992 N.E.2d 859, 869 (Ind. Ct. App. 2013), *abrogated on other grounds by, Cmty. Health Network, Inc. v. McKenzie*, 185 N.E.3d 368 (Ind. 2022) (holding trial court erred by not dismissing intrusion-upon-seclusion claim not predicated on intrusion upon the plaintiff's physical space). Here, Plaintiffs allege an intrusion only of their

digital space, so to speak, not their physical space. (Am. Compl. at ECF pp. 74–75). The Court will not reform Indiana tort law to permit Plaintiffs' claim to go forward. *See, e.g.*, *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 607 (7th Cir. 2000).

Defendants' Motion to Dismiss, (Docket No. 51), is **GRANTED in part**, to the extent that Plaintiffs' unjust enrichment claim (Count IV) is **DISMISSED without prejudice**, with leave to amend, and the intrusion upon seclusion claim (Count III) is **DISMISSED with prejudice**, as granting leave to amend Count III would be futile. Defendants' Motion, (Docket No. 51), is otherwise **DENIED**. Plaintiffs may file an amended complaint within twenty-eight days of the date of this Order, if they wish to do so. If Plaintiffs do not file an amended complaint, this case will proceed on Counts I and II.

**IT IS SO ORDERED**.

Dated: October 28, 2026

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

Distribution:

Electronic service on all ECF-registered counsel of record.